**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| PENINSULA TECHNOLOGIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 2:25-cv-386 |
| v. | § | |
| | § | |
| | § | **JURY TRIAL DEMANDED** |
| DISH WIRELESS L.L.C. D/B/A BOOST | § | |
| MOBILE, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Peninsula Technologies, LLC ("Peninsula") files this Complaint against Defendant DISH Wireless L.L.C. d/b/a Boost Mobile ("DISH" or "Defendant") for infringement of U.S. Patent No. 9,844,009 (the "'009 patent"), U.S. Patent No. 11,792,743 (the "'743 patent"), U.S. Patent No. 11,824,810 (the "'810 patent"), and U.S. Patent No. 11,917,549 (the "'549 patent"), collectively, the "Asserted Patents."

## THE PARTIES

1.      Peninsula Technologies, LLC is a Texas limited liability company, with a principal place of business at 812 West McDermott Dr. #1037, Allen, TX 75013.

2.      On information and belief, DISH Wireless L.L.C. d/b/a Boost Mobile is a limited liability company organized and existing under the laws of Colorado, with its principal place of business at 5701 South Santa Fe Drive, Littleton, Colorado 80120. DISH is doing business, either directly or through its agents, on an ongoing basis in this judicial district and elsewhere in the United States, and has a regular and established place of business in this judicial district. DISH is

1

registered to do business in Texas and may be served through its registered agent, Corporation Service Company dba CSC – Lawyers Inc., 211 East 7th Street, Suite 620, Austin, TX 78701.

3.     On information and belief, DISH, either itself and/or through the activities of its subsidiaries, makes, uses, sells, offers for sale, and/or imports throughout the United States, including within this District, products and services that infringe the Asserted Patents and/or uses methods covered by the Asserted Patents in the United States, and/or induces others to make, use, sell, offer for sale, and/or import throughout the United States, including within this District, products and services that infringe the Asserted Patents and/or use methods covered by the Asserted Patents in the United States, and/or contributes to their infringement of the Asserted Patents, as further described below.

## JURISDICTION AND VENUE

4.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.     This Court has specific and general personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, *inter alia*, (i) Defendant has engaged in continuous, systematic, and substantial business in Texas; (ii) Defendant is registered to do business in Texas; (iii) Defendant maintains regular and established places of business in this District; (iv) Defendant has committed and continues to commit, acts of patent infringement in this State and in this District. Such acts of infringement include the making, using, and selling of cellular services that leverage and infringe the inventions of the Asserted Patents (as more particularly identified and described throughout this Complaint, below) in this State and this District.

2

6.    Defendant maintains a "regular and established" place of business in this district, including by (a) maintaining or controlling retail stores in this district and (b) maintaining and operating infringing base stations in this district, including on cellular towers and other installation sites owned or leased by Defendant. Defendant's significant physical presence in this District includes, but not limited to, ownership of or control over property, inventory, or infrastructure. For example, Defendant maintains retail stores located at 1809 W Loop 281 Ste 105, Longview, TX 75604; 513 E Front St, Tyler, TX 75702, and 1120 E Parker Rd # 112, Plano, TX 75074 (among others), all of which lie within this federal judicial district.

7.    In addition, Defendant has derived substantial revenues from its infringing acts occurring within this State and this District. It has substantial business in this State and this District, including: (i) at least part of its infringing activities alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods and services provided to Texas residents. Defendant derives benefits from its presence in this federal judicial district, including, but not limited to, sales revenue and serving customers using its mobile network in this District. For example, Defendant receives revenue from its corporate stores in this District and through its website (boostmobile.com), by selling network access, phones, and services, and by receiving payment from customers in this District for network access, phones, and services. Defendant derives benefits from its presence in this federal judicial district, including, but not limited to, sales revenue and serving customers using its mobile network in this District.

8.    Defendant has, thus, in the many ways described above, availed itself of the benefits and privileges of conducting business in this State and willingly subjected itself to the exercise of this Court's personal jurisdiction over it. Indeed, Defendant has sufficient minimum contacts with

this forum through its transaction of substantial business in this State and this District and its commission of acts of patent infringement as alleged in this Complaint that are purposefully directed towards this State and District.

9.      Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1400(b) because, among other things, (i) Defendant is subject to personal jurisdiction in this District; (ii) Defendant has committed acts of patent infringement in this District; and (iii) Defendant has regular and established places of business in this District. On information and belief, Defendant maintains "regular and established" places of business in this district, including the numerous retail stores in this District through which it transacts business.

## BACKGROUND

10.      On information and belief, DISH acquired Boost Mobile in 2020 as part of the T-Mobile and Sprint merger. *See https://about.dish.com/2020-07-01-DISH-enters-retail-wireless-market-with-close-of-Boost-Mobile-advances-build-of-the-nations-first-standalone-5G-network.*

11.      On information and belief, Boost Mobile initially operated as a Mobile Virtual Network Operator (MVNO) while it transitions to become a fully independent Mobile Network Operator (MNO). DISH began building its own 5G network infrastructure and beginning in 2022 deployed its own native network. *See https://about.dish.com/2022-06-15-DISHs-Smart-5G-TM-Wireless-Network-is-Now-Available-to-Over-20-Percent-of-the-U-S-Population*. DISH actively began shifting customers to its own native 5G networks. In 2024 alone, DISH migrated over half a million subscribers onto its own network. As of now, all new Boost Mobile customers having a compatible phone in covered areas are loaded directly on their network. *See https://www.theverge.com/2024/11/11/24291655/boost-mobile-5g-dish-wireless.*

12.      On information and belief, DISH is the fourth largest wireless carrier in the United States and now operates as an MNO serving more than 7 million subscribers and having over

20,000       active       cell       sites       (i.e.,       base       stations).       *See*

*https://www.theverge.com/2024/11/11/24291655/boost-mobile-5g-dish-wireless*;       *see       also*

*https://www.telecoms.com/5g-6g/dish-makes-good-on-5g-coverage-commitment.*

13.    On information and belief, DISH's 5G mobile network is 3GPP compliant. *See*
*https://about.dish.com/2023-06-15-The-DISH-5G-Network-is-Now-Available-to-Over-70-*
*Percent-of-the-U-S-Population.*

## THE ASSERTED PATENTS

14.    Peninsula is the sole and exclusive owner of all right, title, and interest in the
Asserted Patents and holds the exclusive right to take all actions necessary to enforce its rights in,
and to, the Asserted Patents, including the filing of this patent infringement lawsuit. Peninsula also
has the right to recover all damages for past, present, and future infringements of the Asserted
Patents and to seek injunctive relief as appropriate under the law.

15.    The '009 Patent is entitled, "Power headroom report in a wireless device with
carrier aggregation." The '009 Patent lawfully issued on December 12, 2017, and stems from U.S.
Patent Application No. 15/470,145 filed on March 27, 2017.

16.    The '743 Patent is entitled, "Transmit power priority based on cell types in wireless
devices." The '743 Patent lawfully issued on October 17, 2023, and stems from U.S. Patent
Application No. 18/056,452, which was filed on November 17, 2022.

17.    The '810 Patent is entitled, "Restarting a deactivation timer of a secondary cell in
a wireless network." The '810 Patent lawfully issued on November 21, 2023, and stems from U.S.
Patent Application No. 17/313,724, which was filed on May 6, 2021.

18.    The '549 Patent is entitled, "Scaling transmission power of uplink signals of a
wireless device." The '549 Patent lawfully issued on February 27, 2024, and stems from U.S.
Patent Application No. 17/864,010, which was filed on July 13, 2022.

19.     Peninsula and its predecessors complied with the requirements of 35 U.S.C. § 287, to the extent necessary, such that Peninsula may recover pre-suit damages for the Asserted Patents.

20.     The claims of the Asserted Patents are directed to patent eligible subject matter under 35 U.S.C. § 101. They are not directed to an abstract idea, and the technologies covered by the claims comprise systems and/or consist of ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional.

## NOTICE

21.     By letter delivered April 4, 2025, as well as through other correspondence and communications with DISH and DISH-related entities prior to the filing of this Complaint, Peninsula via its licensing agent notified DISH of the existence of the Asserted Patents, provided claim charts for each of the Asserted Patents identifying exemplary infringed claims and exemplary infringing DISH products and services, and invited DISH to hold a licensing discussion with Peninsula.

## COUNT I
### (INFRINGEMENT OF U.S. PATENT NO. 9,844,009)

22.     Plaintiff incorporates the preceding paragraphs herein by reference.

23.     Peninsula is the assignee of the '009 Patent, with ownership of all substantial rights, title, and interest in and to the '009 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

24.     The '009 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on December 12, 2017, after full and fair examination.

25.    Defendant has directly infringed and directly infringes one or more claims pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, including at least claim 1[1] of the '009 Patent in this District and elsewhere in Texas and the United States through the provisioning and operation of its cellular network. Such infringement includes, but is not limited to, the making, using, offering to sell, and selling of cellular services, products, and/or networks that leverage and infringe the inventions of the '009 Patent, and Defendant performing methods covered by the inventions of the '009 Patent. For example, on information and belief, the accused 3GPP 5G cellular network offering Boost Mobile-branded services includes cellular base stations and mobile phones that employ media access control messaging techniques covered by the '009 Patent (collectively, the "'009 Accused Instrumentalities").

26.    On information and belief, by way of illustration only, Defendant's '009 Accused Instrumentalities comprise each and every element of claim 1 of the '009 Patent. The '009 Accused Instrumentalities comprise "a base station comprising: one or more processors; and memory storing instructions that, when executed by the one or more processors, cause the base station to: transmit at least one message comprising configuration parameters of one or more secondary cells." *See supra.*, ¶¶ 12-13 (showing DISH operates a 3GPP 5G network which comprises base stations, i.e., New Generation Node Bs (gNBs)). For example, the '009 Accused Instrumentalities include a base station, i.e., Next Generation NodeB (gNB), that contains instruction stored in memory that, when executed by a processor, cause a gNB to send a *RRCreconfiguration* message comprising configuration parameters of one or more secondary cells:[2]

---

[1] Throughout this Complaint, wherever Peninsula identifies specific claims of the Asserted Patents infringed by Defendant, Peninsula expressly reserves the right to identify additional claims and products in its infringement contentions in accordance with applicable local rules and the Court's case management order. Specifically identified claims throughout this Complaint are provided for notice pleading only.

[2] *See, e.g.,* 3GPP TS 38.331 V18.1.0 (2024-03), pgs. 28, 89, 489-496, 672-686, 1039, 1057 (showing the *RRCreconfiguration* message contains the *secondaryCellGroup* and *masterCellGroup* information elements (IEs) for configuring the SCG and MCG respectively and each contains the *CellGroupConfig* IE; the *CellGroupConfig* contains



**Figure 5.3.5.1-1: RRC reconfiguration, successful**

The purpose of this procedure is to modify an RRC connection, e.g. to establish/modify/release RBs/BH RLC channels/Uu Relay RLC channels/PC5 Relay RLC channels, to perform reconfiguration with sync, to setup/modify/release measurements, to add/modify/release SCells and cell groups, to add/modify/release conditional reconfiguration configuration, to add/modify/release LTM configuration, and to add/modify/release MP configuration. As part of the procedure, NAS dedicated information may be transferred from the Network to the UE.

27.     On information and belief, the '009 Accused Instrumentalities comprise a base station caused to "receive a power headroom report media access control control element (PHR MAC CE) comprising a presence field comprising a plurality of presence bits, wherein: the presence field is of a fixed size of one octet when up to seven secondary cells are configured in the wireless device, each cell in the one or more secondary cells having a cell index with a value between one and seven; and the presence field is of a fixed size of four octets when the one or more secondary cells comprise more than seven secondary cells with configured uplinks." For example, a gNB of the '009 Accused Instrumentalities receives a PHR MAC CE message that contains a presence of a PH per Serving Cell bitmap, which is one octet in size if less than 8 secondary cells are present and four octets in size if more than 8 secondary cells are present:[3]

The Power Headroom reporting procedure is used to provide the serving gNB with the following information:

3> instruct the Multiplexing and Assembly procedure to generate and transmit the Multiple Entry PHR MAC CE as defined in subclause 6.1.3.9 based on the values reported by the physical layer.

the *ServCellIndex* and *SCellIndex* IEs; and the *ServCellIndex* and *SCellIndex* IEs reference the secondary cells which are configured by configuration parameters within *CellGroupConfig*, such as *sCellToAddModList*).
[3] *See, e.g.,* 3GPP TS 38.321 V15.4.0 (2018-12), pgs. 36-37, 59.

> A single octet bitmap is used for indicating the presence of PH per Serving Cell when the highest *ServCellIndex* of Serving Cell with configured uplink is less than 8, otherwise four octets are used.

28.    On information and belief, the '009 Accused Instrumentalities comprise a base station caused to "transmit one or more control commands employing at least the PHR MAC CE." For example, a gNB of the '009 Accused Instrumentalities uses the received PHR MAC CE to transmit DCI commands for power-aware packet scheduling to enable a user equipment (e.g. mobile phone) to determine a PUSCH transmission power:[4]

> Power headroom reports (PHR) are needed to provide support for power-aware packet scheduling. In NR, three types of reporting are supported: a first one for PUSCH transmission, a second one for PUSCH and PUCCH transmission in an LTE Cell Group in EN-DC (see TS 37.340 [21]) and a third one for SRS transmission on SCells configured with SRS only. In case of CA, when no transmission takes place on an activated SCell, a reference power is used to provide a virtual report. Power headroom reports are transmitted using MAC signalling.

> DCI format 0_0 is used for the scheduling of PUSCH in one cell.
>
> The following information is transmitted by means of the DCI format 0_0 with CRC scrambled by C-RNTI or CS-RNTI or MCS-C-RNTI:
>
> - TPC command for scheduled PUSCH – 2 bits as defined in Subclause 7.1.1 of [5, TS 38.213]

29.    On information and belief, Defendant has induced and induces infringement of the '009 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners, customers, and end users, to use, sell, and/or offer to sell in the United States the '009 Accused Instrumentalities and/or use methods covered by the '009 Patent in the United States by, among other things, providing the '009 Accused Instrumentalities, instructions, manuals, advertisements, marketing materials, and technical assistance relating to the set up, use, operation, and maintenance of the '009 Accused Instrumentalities. *See supra.*, ¶ 21 (explaining DISH's notice of infringement); *see also, generally,*

---

[4] *See, e.g.,* 3GPP TS 38.300 V15.7.0 (2019-09), pgs. 63-64 (showing the base station utilizes PHR MAC CEs to support power aware packet scheduling for a PUSCH transmission); *see also* 3GPP TS 38.212 V15.4.0 (2018-12), pgs. 73-77 (shows a DCI command is used for scheduling of a PUSCH transmission and that a DCI command contains a Transmit Power Control (TPC) command value); *see also* 3GPP TS 38.213 V15.4.0 (2018-12); pgs. 14-19. (showing that a user equipment (UE) calculates PUSCH transmission power using the TPC command field value).

*https://www.boostmobile.com/* (marketing materials encouraging customers to purchase products and services included in the '009 Accused Instrumentalities).

30.     On information and belief, Defendant has committed the foregoing infringing activities without a license.

31.     Peninsula has been damaged as a result of Defendant's infringement described in this Count. Defendant is, thus, liable to Peninsula in an amount that adequately compensates Peninsula for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

32.     On information and belief, Defendant knew the '009 Patent existed and knew of exemplary infringing DISH products and services while committing the foregoing infringing acts thereby willfully, wantonly and deliberately infringing the '009 Patent.

## COUNT II

### (INFRINGEMENT OF U.S. PATENT NO. 11,792,743)

33.     Plaintiff incorporates the preceding paragraphs herein by reference.

34.     Peninsula is the assignee of the '743 Patent, with ownership of all substantial rights, title, and interest in and to the '743 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

35.     The '743 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on October 17, 2023, after full and fair examination.

36.     Defendant has directly infringed and directly infringes one or more claims pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, including at least claim 15 of the '743 Patent in this District and elsewhere in Texas and the United States through the provisioning and operation of its cellular network. Such infringement includes, but is not limited to, the making, using, offering to sell, and selling of cellular services, products, and/or networks

that leverage and infringe the inventions of the '743 Patent, and Defendant performing methods covered by the inventions of the '743 Patent. For example, on information and belief, the accused 3GPP cellular network offering Boost Mobile-branded services includes cellular base stations and mobile phones that employ multicarrier signal timing techniques covered by the '743 Patent (collectively, the "'743 Accused Instrumentalities").

37.    On information and belief, by way of illustration only, Defendant's '743 Accused Instrumentalities comprises each and every element of claim 15 of the '743 Patent. The '743 Accused Instrumentalities comprise "a base station comprising: one or more processors; and memory storing instructions that, when executed by the one or more processors, cause the base station to: transmit configuration parameters of: one or more first cells of a first cell type; and one or more second cells of a second cell type." *See supra.*, ¶¶ 12-13 (showing DISH operates a 3GPP 5G network which comprises base stations, i.e., New Generation Node Bs (gNBs)). For example, the '743 Accused Instrumentalities include a base station, i.e., Next Generation NodeB (gNB), that contains instruction stored in memory that, when executed by a processor, cause a gNB to send a *RRCReconfiguration* message comprising configuration parameters of cell groups such as *sCellToAddModList* and *spCellConfig* Information Elements (IEs) for a secondary cell group (SCG) using New Radio (NR) radio access (i.e., first cell) and a master cell group (MCG) using NR radio access (i.e., second cell) when in an NR NR dual connectivity (NR-DC) environment:[5]

---

[5] *See, e.g.,* 3GPP TS 38.213 V18.1.0 (2024-03), pgs. 45-47 (showing a user equipment (UE) in an NR-DC environment is configured with a SCG using NR radio access and an MCG using NR radio access); *see also* 3GPP TS 38.331 V18.1.0 (2024-03), pgs. 89, 489-496, 672-686 (showing a *RRCReconfiguration* message contains the *CellGroupConfig* IE to configure a SCG and an MCG, which contains configuration parameters such as *sCellToAddModList* and *spCellConfig* IEs).

## 7.6.2    NR-DC

The UE procedures described in this clause are not applicable if the UE is provided *scg-State* [12, TS 38.331].

If a UE is configured with an MCG using NR radio access in FR1 or in FR2 and with a SCG using NR radio access in FR2 or in FR1, respectively, the UE performs transmission power control independently per cell group as described in clauses 7.1 through 7.5.

If a UE is configured with an MCG and a SCG using NR radio access in FR1 and/or in FR2, the UE is configured a maximum power $P_{MCG}$ for transmissions on the MCG by *p-NR-FR1* and/or *p-NR-FR2* and a maximum power $P_{SCG}$ for transmissions on the SCG by *p-NR-FR1* and/or *p-NR-FR2* and with an inter-CG power sharing mode by *nrdc-PCmode-FR1* for FR1 and/or by *nrdc-PCmode-FR2* for FR2. The UE determines a transmission power on the MCG and a transmission power on the SCG per frequency range.



**Figure 5.3.5.1-1: RRC reconfiguration, successful**

The purpose of this procedure is to modify an RRC connection, e.g. to establish/modify/release RBs/BH RLC channels/Uu Relay RLC channels/PC5 Relay RLC channels, to perform reconfiguration with sync, to setup/modify/release measurements, to add/modify/release SCells and cell groups, to add/modify/release conditional reconfiguration configuration, to add/modify/release LTM configuration, and to add/modify/release MP configuration. As part of the procedure, NAS dedicated information may be transferred from the Network to the UE.

–      *RRCReconfiguration*

The *RRCReconfiguration* message is the command to modify an RRC connection. It may convey information for measurement configuration, mobility control, radio resource configuration (including RBs, MAC main configuration and physical channel configuration) and AS security configuration.

Signalling radio bearer: SRB1 or SRB3

RLC-SAP: AM

Logical channel: DCCH

Direction: Network to UE

***RRCReconfiguration message***

```
-- ASN1START
-- TAG-RRCRECONFIGURATION-START

RRCReconfiguration ::=               SEQUENCE {
    rrc-TransactionIdentifier            RRC-TransactionIdentifier,
```

```
    criticalExtensions              CHOICE {
        rrcReconfiguration              RRCReconfiguration-IEs,
        criticalExtensionsFuture        SEQUENCE {
        }
    }

RRCReconfiguration-IEs ::=          SEQUENCE {
    radioBearerConfig               RadioBearerConfig                               OPTIONAL,  -- Need M
    secondaryCellGroup              OCTET STRING (CONTAINING CellGroupConfig)        OPTIONAL,  -- Cond SCG
    measConfig                      MeasConfig                                      OPTIONAL,  -- Need M
    lateNonCriticalExtension        OCTET STRING                                    OPTIONAL,
    nonCriticalExtension            RRCReconfiguration-v1530-IEs                    OPTIONAL
}

RRCReconfiguration-v1530-IEs ::=    SEQUENCE {
    masterCellGroup                 OCTET STRING (CONTAINING CellGroupConfig)        OPTIONAL,  -- Need M
    fullConfig                      ENUMERATED {true}                               OPTIONAL,  -- Cond FullConfig
    dedicatedNAS-MessageList        SEQUENCE (SIZE(1..maxDRB)) OF DedicatedNAS-Message  OPTIONAL,  -- Cond nonHO
    masterKeyUpdate                 MasterKeyUpdate                                 OPTIONAL,  -- Cond MasterKeyChange
    dedicatedSIB1-Delivery          OCTET STRING (CONTAINING SIB1)                  OPTIONAL,  -- Need N
    dedicatedSystemInformationDelivery  OCTET STRING (CONTAINING SystemInformation)  OPTIONAL,  -- Need N
    otherConfig                     OtherConfig                                     OPTIONAL,  -- Need M
    nonCriticalExtension            RRCReconfiguration-v1540-IEs                    OPTIONAL
}
```

---

**–    CellGroupConfig**

The *CellGroupConfig* IE is used to configure a master cell group (MCG) or secondary cell group (SCG). A cell group comprises one MAC entity, a set of logical channels with associated RLC entities and of a primary cell (SpCell) and one or more secondary cells (SCells). For an NCR-MT, the *CellGroupConfig* IE is also used to provide the configuration of side control information for the NCR-Fwd access link.

*CellGroupConfig* information element

```
-- ASN1START
-- TAG-CELLGROUPCONFIG-START

-- Configuration of one Cell-Group:
CellGroupConfig ::=                 SEQUENCE {
    cellGroupId                     CellGroupId,
    rlc-BearerToAddModList          SEQUENCE (SIZE(1..maxLC-ID)) OF RLC-BearerConfig       OPTIONAL,  -- Need N
    rlc-BearerToReleaseList         SEQUENCE (SIZE(1..maxLC-ID)) OF LogicalChannelIdentity  OPTIONAL,  -- Need N
    mac-CellGroupConfig             MAC-CellGroupConfig                                   OPTIONAL,  -- Need M
    physicalCellGroupConfig         PhysicalCellGroupConfig                               OPTIONAL,  -- Need M
    spCellConfig                    SpCellConfig                                          OPTIONAL,  -- Need M
    sCellToAddModList               SEQUENCE (SIZE (1..maxNrofSCells)) OF SCellConfig     OPTIONAL,  -- Need N
    sCellToReleaseList              SEQUENCE (SIZE (1..maxNrofSCells)) OF SCellIndex       OPTIONAL,  -- Need N
    ...,
```

**_sCellToAddModList_**
List of secondary serving cells (SCells) to be added or modified.

**_spCellConfig_**
Parameters for the SpCell of this cell group (PCell of MCG or PSCell of SCG).

38.    On information and belief, the '743 Accused Instrumentalities comprise a base station caused to "receive: a first uplink signal, during a time interval, via the one or more first cells; and a second uplink signal, during the time interval, via the one or more second cells." For example, a gNB of the '743 Accused Instrumentalities receives transmissions on the SCG and the MCG during the same time internal, i.e., the transmissions overlap:[6]

---

[6] *See, e.g.,* 3GPP TS 38.213 V17.2.0 (2022-06), pgs. 45-47 (showing transmissions on the MCG and the SCG overlap in an NR-DC environment and in a dynamic power sharing mode).

### 7.6.2    NR-DC

The UE procedures described in this clause are not applicable if the UE is provided *scg-State* [12, TS 38.331].

If a UE is <u>configured with an MCG using NR radio access</u> in FR1 or in FR2 and with a <u>SCG using NR radio access</u> in FR2 or in FR1, respectively, the UE performs transmission power control independently per cell group as described in clauses 7.1 through 7.5.

If a UE is <u>configured with an MCG and a SCG using NR radio access</u> in FR1 and/or in FR2, the UE is configured a maximum power $P_{MCG}$ for transmissions on the MCG by *p-NR-FR1* and/or by *p-NR-FR2* and a maximum power $P_{SCG}$ for transmissions on the SCG by *p-NR-FR1* and/or by *p-NR-FR2* and with an inter-CG power sharing mode by *nrdc-PCmode-FR1* for FR1 and/or by *nrdc-PCmode-FR2* for FR2. The UE determines a transmission power on the MCG and a transmission power on the SCG per frequency range.

---

If a UE

- is provided *dynamic* for *nrdc-PCmode-FR1* or for *nrdc-PCmode-FR2*, and

- indicates a capability to support dynamic power sharing for intra-FR NR DC,

the UE determines a maximum transmission power on the SCG at a first symbol of a transmission occasion on the SCG by determining <u>transmissions on the MCG that</u>

- are scheduled by DCI formats in PDCCH receptions with a last symbol that is earlier by at least $T_{\text{offset}}$ from the first symbol of the transmission occasion on the SCG, or are configured by higher layers, and

- <u>overlap with the transmission occasion on the SCG</u>

the maximum transmission power on the SCG is determined as

- $min(\hat{P}_{SCG}, \hat{P}_{\text{Total}}^{\text{NR-DC}} - \hat{P}_{MCG}^{\text{actual}})$, if the UE determines transmissions on the MCG with a $\hat{P}_{MCG}^{\text{actual}}$ total power

---

39.    On information and belief, the '743 Accused Instrumentalities comprise a base station caused to receive uplink signals "wherein a transmission power of the first uplink signal is scaled, based on a transmit power priority of the first uplink signal, in response to a calculated total transmit power of a plurality of signals comprising the first uplink signal and the second uplink signal exceeding a first value, and wherein the transmit power priority is based on a cell type of the one or more first cells." For example, a gNB of the '743 Accused Instrumentalities receives uplink signals wherein the maximum transmission power of the SCG signal is scaled down, i.e., decreased, based on SCG signals having a lower priority than MCG signals and in response to the

total power across the MCG and SCG signals exceeding the maximum total transmission power

$\hat{P}_{Total}^{NR-DC}$.[7]

---

### 7.6.2     NR-DC

The UE procedures described in this clause are not applicable if the UE is provided *scg-State* [12, TS 38.331].

If a UE is configured with an MCG using NR radio access in FR1 or in FR2 and with a SCG using NR radio access in FR2 or in FR1, respectively, the UE performs transmission power control independently per cell group as described in clauses 7.1 through 7.5.

If a UE is configured with an MCG and a SCG using NR radio access in FR1 and/or in FR2, the UE is configured a maximum power $P_{MCG}$ for transmissions on the MCG by *p-NR-FR1* and/or by *p-NR-FR2* and a maximum power $P_{SCG}$ for transmissions on the SCG by *p-NR-FR1* and/or by *p-NR-FR2* and with an inter-CG power sharing mode by *nrdc-PCmode-FR1* for FR1 and/or by *nrdc-PCmode-FR2* for FR2. The UE determines a transmission power on the MCG and a transmission power on the SCG per frequency range.

---

If a UE

- is provided *dynamic* for *nrdc-PCmode-FR1* or for *nrdc-PCmode-FR2*, and

- indicates a capability to support dynamic power sharing for intra-FR NR DC,

the UE determines a maximum transmission power on the SCG at a first symbol of a transmission occasion on the SCG by determining transmissions on the MCG that

- are scheduled by DCI formats in PDCCH receptions with a last symbol that is earlier by at least $T_{\text{offset}}$ from the first symbol of the transmission occasion on the SCG, or are configured by higher layers, and

- overlap with the transmission occasion on the SCG

the maximum transmission power on the SCG is determined as

- $min\left(\hat{P}_{\text{SCG}}, \hat{P}_{\text{Total}}^{\text{NR-DC}} - \hat{P}_{\text{MCG}}^{\text{actual}}\right)$, if the UE determines transmissions on the MCG with a $\hat{P}_{\text{MCG}}^{\text{actual}}$ total power

---

40.     On information and belief, Defendant has induced and induces infringement of the

'743 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing,

causing, and encouraging others, including, but not limited to, its partners, customers, and end

users, to use, sell, and/or offer to sell in the United States the '743 Accused Instrumentalities and/or

---

[7] *See, e.g., Id.*, pgs. 43, 45-47 (showing that, based on SCG signals having a lower priority than MCG signals, transmission power of SCG signals are scaled down; showing "the UE performs transmission power control independently per cell group" and dynamic mode, as compared to semi-static mode, anticipates $P_{MCG}$ and $P_{SCG}$ to be configured such that $\hat{P}_{MCG} + \hat{P}_{SCG} > \hat{P}_{Total}^{NR-DC}$, so in response to transmission power of the MCG and SCG signals exceeding the maximum total transmission power, dynamic power sharing ensures transmission power does not exceed the maximum allowed); *see also* 3GPP TS 38.101-1 V17.2.0 (2021-06), pgs. 228-230 (showing, e.g., that the maximum transmission power for the MCG and the SCG are configured independently and enable maximum transmission for each of the MCG and SCG to be the full transmission power of $\hat{P}_{Total}^{NR-DC}$).

use methods covered by the '743 Patent in the United States by, among other things, providing the '743 Accused Instrumentalities, instructions, manuals, advertisements, marketing materials, and technical assistance relating to the set up, use, operation, and maintenance of the '743 Accused Instrumentalities. *See supra.*, ¶ 21 (explaining DISH's notice of infringement); *see also, generally*, *https://www.boostmobile.com/* (marketing materials encouraging customers to purchase products and services included in the '743 Accused Instrumentalities); *see also, e.g.*, *https://about.dish.com/2024-07-17-Boost-Mobile-the-Newest-Wireless-Carrier-Launches-New-State-of-the-Art-Nationwide-5G-Network,-Plans-and-Branding* (DISH encouraging customers to purchase DISH products and services because "Boost Mobile customers have access to more towers than any other carrier").

41.    On information and belief, Defendant has committed the foregoing infringing activities without a license.

42.    Peninsula has been damaged as a result of Defendant's infringement described in this Count. Defendant is, thus, liable to Peninsula in an amount that adequately compensates Peninsula for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

43.    On information and belief, Defendant knew the '743 Patent existed and knew of exemplary infringing DISH products and services while committing the foregoing infringing acts thereby willfully, wantonly and deliberately infringing the '743 Patent.

## COUNT III

### (INFRINGEMENT OF U.S. PATENT NO. 11,824,810)

44.    Plaintiff incorporates the preceding paragraphs herein by reference.

45.     Peninsula is the assignee of the '810 Patent, with ownership of all substantial rights, title, and interest in and to the '810 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

46.     The '810 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on November 21, 2023, after full and fair examination.

47.     Defendant has directly infringed and directly infringes one or more claims pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, including at least claim 17 of the '810 Patent in this District and elsewhere in Texas and the United States through the provisioning and operation of its cellular network. Such infringement includes, but is not limited to, the making, using, offering to sell, and selling of cellular services, products, and/or networks that leverage and infringe the inventions of the '810 Patent, and Defendant performing methods covered by the inventions of the '810 Patent. For example, on information and belief, the accused 3GPP 5G cellular network offering Boost Mobile-branded services includes cellular base stations and mobile phones that employ control signaling techniques covered by the '810 Patent (collectively, the "'810 Accused Instrumentalities").

48.     On information and belief, by way of illustration only, Defendant's '810 Accused Instrumentalities comprise each and every element of claim 17 of the '810 Patent. The '810 Accused Instrumentalities comprise "a base station comprising: one or more processors; and memory storing instructions that, when executed by the one or more processors, cause the base station to: transmit, to a wireless device, a resource assignment indicating a plurality of time intervals of a secondary cell for communicating with the wireless device." *See supra.*, ¶¶ 12-13 (showing DISH operates a 3GPP 5G network which comprises base stations, i.e., New Generation Node Bs (gNBs)). For example, the '810 Accused Instrumentalities include a base station, i.e.,

Next Generation NodeB (gNB), that contains instructions stored in memory that, when executed by a processor, cause a gNB to send a *RRCSetup* message comprising secondary cell configurations including a periodicity which is used to schedule a plurality of time intervals during which communication between the user equipment and the secondary cell can take place:[8]



**Figure 5.3.3.1-1: RRC connection establishment, successful**

Semi-Persistent Scheduling (SPS) is configured by RRC per Serving Cell and per BWP. Activation and deactivation of the DL SPS are independent among the Serving Cells.

RRC configures the following parameters when SPS is configured:

- *periodicity*: periodicity of configured downlink assignment for SPS.

After a downlink assignment is configured for SPS, the MAC entity shall consider sequentially that the $N^{th}$ downlink assignment occurs in the slot for which:

$$(numberOfSlotsPerFrame \times SFN + \text{slot number in the frame}) =$$
$$[(numberOfSlotsPerFrame \times SFN_{start\ time} + slot_{start\ time}) + N \times periodicity \times numberOfSlotsPerFrame / 10] \text{ modulo } (1024 \times numberOfSlotsPerFrame)$$

where $SFN_{start\ time}$ and $slot_{start\ time}$ are the SFN and slot, respectively, of the first transmission of PDSCH where the configured downlink assignment was (re-)initialised.

---

[8] *See, e.g.,* 3GPP TS 38.331 V18.1.0 (2024-03), pgs. 77, 520-521, 655-658, 672-686, 1057-1058, 1100-1115 (showing the *RRCSetup* message contains a *masterCellGroup* information element (IE), which contains a *CellGroupConfig* IE, which contains a *SCellConfig* IE (which configures the secondary cells), which contains a *sCellConfigDedicated* IE, which contains a *ServingCellConfig* IE, which contains an *initialDownlinkBWP* IE, which contains a *BWP-DownlinkDedicated* IE, which contains a *sps-Config* IE, which contains a *periodicity*, i.e., time interval); *see also* 3GPP TS 38.321 V15.4.0 (2018-12), pgs. 40-41 (showing the RRC messaging assigning resources of a secondary cell using a *periodicity* for communicating with the user equipment).

49.    On information and belief, the '810 Accused Instrumentalities comprise a base station caused to "restart a deactivation timer associated with the secondary cell in response to communicating, via the secondary cell, an uplink packet or a downlink packet with the wireless device during a first time interval of the plurality of time intervals." For example, a gNB of the '810 Accused Instrumentalities restarts a *sCellDeactivationTimer* associated with a secondary cell when a downlink packet is communicated, via the secondary cell, with the user equipment during a configured downlink assignment:[9]

> The configured SCell(s) is activated and deactivated by:

> -    configuring *sCellDeactivationTimer* timer per configured SCell (except the SCell configured with PUCCH, if any): the associated SCell is deactivated upon its expiry.

> 1>  if a MAC PDU is transmitted in a configured uplink grant or received in a configured downlink assignment:
>
> 2>  restart the *sCellDeactivationTimer* associated with the SCell.

50.    On information and belief, Defendant has induced and induces infringement of the '810 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners, customers, and end users, to use, sell, and/or offer to sell in the United States the '810 Accused Instrumentalities and/or use methods covered by the '810 Patent in the United States by, among other things, providing the '810 Accused Instrumentalities, instructions, manuals, advertisements, marketing materials, and technical assistance relating to the set up, use, operation, and maintenance of the '810 Accused Instrumentalities. *See supra.*, ¶ 21 (explaining DISH's notice of infringement); *see also, generally*, *https://www.boostmobile.com/* (marketing materials encouraging customers to purchase products and services included in the '810 Accused Instrumentalities).

---

[9] *See, e.g.,* 3GPP TS 38.321 V15.4.0 (2018-12), pgs. 42-43.

51.     On information and belief, Defendant has committed the foregoing infringing activities without a license.

52.     Peninsula has been damaged as a result of Defendant's infringement described in this Count. Defendant is, thus, liable to Peninsula in an amount that adequately compensates Peninsula for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

53.     On information and belief, Defendant knew the '810 Patent existed and knew of exemplary infringing DISH products and services while committing the foregoing infringing acts thereby willfully, wantonly and deliberately infringing the '810 Patent.

## COUNT IV

### (INFRINGEMENT OF U.S. PATENT NO. 11,917,549)

54.     Plaintiff incorporates the preceding paragraphs herein by reference.

55.     Peninsula is the assignee of the '549 Patent, with ownership of all substantial rights, title, and interest in and to the '549 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

56.     The '549 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on February 27, 2024, after full and fair examination.

57.     Defendant has directly infringed and directly infringes one or more claims pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, including at least claim 16 of the '549 Patent in this District and elsewhere in Texas and the United States through the provisioning and operation of its cellular network. Such infringement includes, but is not limited to, the making, using, offering to sell, and selling of cellular services, products, and/or networks that leverage and infringe the inventions of the '549 Patent, and Defendant performing methods covered by the inventions of the '549 Patent. For example, on information and belief, the accused

3GPP cellular network offering Boost Mobile-branded services includes cellular base stations and mobile phones that employ multicarrier optimization techniques covered by the '549 Patent (collectively, the "'549 Accused Instrumentalities").

58.    On information and belief, by way of illustration only, Defendant's '549 Accused Instrumentalities comprise each and every element of claim 16 of the '549 Patent. The '549 Accused Instrumentalities comprise "a base station comprising: one or more processors; and memory storing instructions that, when executed by the one or more processors, cause the base station to: transmit, to a wireless device, one or more radio resource control messages comprising: at least one first power parameter indicating a first maximum total transmit power of a first group comprising one or more first cells of a first frequency band; and at least one second power parameter indicating a second maximum total transmit power of a second group comprising one or more second cells of a second frequency band different from the first frequency band." *See supra.*, ¶¶ 12-13 (showing DISH operates a 3GPP 5G network which comprises base stations, i.e., New Generation Node Bs (gNBs)). For example, in an NR NR dual connectivity (NR-DC) environment, the '549 Accused Instrumentalities comprise a base station, i.e., Next Generation NodeB (gNB), that sends to a user equipment (UE) a *RRCReconfiguration* message comprising the maximum transmit power allowed to be used by a UE, e.g., a *p-NR-FR1* parameter and a *p-NR-FR2* parameter, for a secondary cell group (SCG) using New Radio (NR) radio access (i.e., first cell group) and a master cell group (MCG) using NR radio access (i.e., second cell group):[10]

---

[10] *See, e.g.,* 3GPP TS 38.331 V18.1.0 (2024-03), pgs. 89, 489-496, 672-686, 920-929 (showing a *RRCReconfiguration* message contains a *CellGroupConfig* IE, which contains a *PhysicalCellGroupConfig* IE, which contains a *p-NR-FR1* and *p-NR-FR2* parameters, which is the maximum total transmit power to be used by a UE in a NR cell group in a frequency range) *see also* 3GPP TS 38.213 V17.2.0 (2022-06), pgs. 45-47 (showing a user equipment (UE) in an NR-DC environment is configured with a SCG using NR radio access and an MCG using NR radio access).



**Figure 5.3.5.1-1: RRC reconfiguration, successful**

---

*p-NR-FR1*
The maximum total transmit power to be used by the UE in this NR cell group across all serving cells in frequency range 1 (FR1). The maximum transmit power that the UE may use may be additionally limited by *p-Max* (configured in *FrequencyInfoUL*) and by *p-UE-FR1* (configured total for all serving cells operating on FR1).

*p-NR-FR2*
The maximum total transmit power to be used by the UE in this NR cell group across all serving cells in frequency range 2 (FR2). The maximum transmit power that the UE may use may be additionally limited by *p-Max* (configured in *FrequencyInfoUL*) and by *p-UE-FR2* (configured total for all serving cells operating on FR2). This field is only used in NR-DC. A UE does not expect to be configured with this parameter in this release of the specification.

---

## 7.6.2 NR-DC

The UE procedures described in this clause are not applicable if the UE is provided *scg-State* [12, TS 38.331].

If a UE is configured with an MCG using NR radio access in FR1 or in FR2 and with a SCG using NR radio access in FR2 or in FR1, respectively, the UE performs transmission power control independently per cell group as described in clauses 7.1 through 7.5.

If a UE is configured with an MCG and a SCG using NR radio access in FR1 and/or in FR2, the UE is configured a maximum power $P_{MCG}$ for transmissions on the MCG by *p-NR-FR1* and/or by *p-NR-FR2* and a maximum power $P_{SCG}$ for transmissions on the SCG by *p-NR-FR1* and/or by *p-NR-FR2* and with an inter-CG power sharing mode by *nrdc-PCmode-FR1* for FR1 and/or by *nrdc-PCmode-FR2* for FR2. The UE determines a transmission power on the MCG and a transmission power on the SCG per frequency range.

59.    On information and belief, Defendant's '549 Accused Instrumentalities comprise a base station caused to "receive: one or more first signals via the first group, wherein a first transmission power of at least one of the one or more first signals is scaled based on a first total power for transmission of the one or more first signals exceeding the first maximum total transmit power; and one or more second signals via the second group, wherein a second transmission power of at least one of the one or more second signals is scaled based on a second total power for transmission of the one or more second signals exceeding the second maximum total transmit power." For example, the '549 Accused Instrumentalities comprise a base station that receives transmissions from the UE on the MCG where the maximum transmission power is scaled down,

i.e., decreased, based on the signals on the MCG exceeding maximum transmission power $\hat{P}_{MCG}$ ($\hat{P}_{CMAX}$), and receives transmissions from the UE on the SCG where the maximum transmission power is scaled down, i.e., decreased, based on the signals on the SCG exceeding maximum transmission power $\hat{P}_{SCG}$ ($\hat{P}_{CMAX}$):[11]

---

### 7.6.2    NR-DC

The UE procedures described in this clause are not applicable if the UE is provided *scg-State* [12, TS 38.331].

If a UE is configured with an MCG using NR radio access in FR1 or in FR2 and with a SCG using NR radio access in FR2 or in FR1, respectively, the UE performs transmission power control independently per cell group as described in clauses 7.1 through 7.5.

If a UE is configured with an MCG and a SCG using NR radio access in FR1 and/or in FR2, the UE is configured a maximum power $P_{MCG}$ for transmissions on the MCG by *p-NR-FR1* and/or by *p-NR-FR2* and a maximum power $P_{SCG}$ for transmissions on the SCG by *p-NR-FR1* and/or by *p-NR-FR2* and with an inter-CG power sharing mode by *nrdc-PCmode-FR1* for FR1 and/or by *nrdc-PCmode-FR2* for FR2. The UE determines a transmission power on the MCG and a transmission power on the SCG per frequency range.

---

If a UE is provided *semi-static-mode1* for *nrdc-PCmode-FR1* or for *nrdc-PCmode-FR2*, the UE determines a transmission power for the MCG or for the SCG as described in clauses 7.1 through 7.5 using $P_{MCG}$ or $P_{SCG}$ as the maximum transmission power, respectively.

---

### 7.1.1    UE behaviour

If a UE transmits a PUSCH on active UL BWP $b$ of carrier $f$ of serving cell $c$ using parameter set configuration with index $j$ and PUSCH power control adjustment state with index $l$, the UE determines the PUSCH transmission power $P_{\text{PUSCH},b,f,c}(i,j,q_d,l)$ in PUSCH transmission occasion $i$ as

$$P_{\text{PUSCH},b,f,c}(i,j,q_d,l) = \min\begin{cases} P_{\text{CMAX},f,c}(i), \\ P_{\text{O\_PUSCH},b,f,c}(j)+10\log_{10}(2^\mu \cdot M_{\text{RB},b,f,c}^{\text{PUSCH}}(i)) + \alpha_{b,f,c}(j)\cdot PL_{b,f,c}(q_d)+\Delta_{\text{TF},b,f,c}(i)+f_{b,f,c}(i,l) \end{cases}$$
$$[\text{dBm}]$$

where,

- $P_{\text{CMAX},f,c}(i)$ is the UE configured maximum output power defined in [8-1, TS 38.101-1], [8-2, TS 38.101-2] and [8-3, TS 38.101-3] for carrier $f$ of serving cell $c$ in PUSCH transmission occasion $i$.

---

[11] *See, e.g.,* 3GPP TS 38.213 V17.2.0 (2022-06), pgs. 21-22, 43, 45-47 (showing transmission power of signals on the MCG and signals on the SCG are each scaled down so as not to exceed the configured maximum transmission power, $\hat{P}_{MCG}$ ($\hat{P}_{CMAX}$) and $\hat{P}_{SCG}$ ($\hat{P}_{CMAX}$), respectively); *see also* 3GPP TS 38.101-1 V17.2.0 (2021-06), pgs. 228-230.

## 7.5 Prioritizations for transmission power reductions

For single cell operation with two uplink carriers or for operation with carrier aggregation, if a total UE transmit power for PUSCH or PUCCH or PRACH or SRS transmissions on serving cells in a frequency range in a respective transmission occasion $i$ would exceed $P_{CMAX}(i)$, where $P_{CMAX}(i)$ is the linear value of $P_{CMAX}(i)$ in transmission occasion $i$ as defined in [8-1, TS 38.101-1] for FR1 and [8-2, TS 38.101-2] for FR2, the UE allocates power to PUSCH/PUCCH/PRACH/SRS transmissions according to the following priority order (in descending order) so that the total UE transmit power for transmissions on serving cells in the frequency range is smaller than or equal to $\tilde{P}_{CMAX}(i)$ for that frequency range in every symbol of transmission occasion $i$. For the purpose of power allocation in this clause, if a UE is provided *UCI-MuxWithDifferentPriority* and the UE multiplexes HARQ-ACK information in a PUSCH, a priority index of the PUSCH is the larger of (a) the priority index of the PUSCH according to clause 9 and (b) the larger priority index of the HARQ-ACK information. When determining a total transmit power for serving cells in a frequency range in a symbol of transmission occasion $i$, the UE does not include power for transmissions starting after the symbol of transmission occasion $i$. The total UE transmit power in a symbol of a slot is defined as the sum of the linear values of UE transmit powers for PUSCH, PUCCH, PRACH, and SRS in the symbol of the slot.

60.     On information and belief, Defendant has induced and induces infringement of the '549 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners, customers, and end users, to use, sell, and/or offer to sell in the United States the '549 Accused Instrumentalities and/or use methods covered by the '549 Patent in the United States by, among other things, providing the '549 Accused Instrumentalities, instructions, manuals, advertisements, marketing materials, and technical assistance relating to the set up, use, operation, and maintenance of the '549 Accused Instrumentalities. *See supra.*, ¶ 21 (explaining DISH's notice of infringement); *see also, generally*, *https://www.boostmobile.com/* (marketing materials encouraging customers to purchase products and services included in the '549 Accused Instrumentalities); *see also, e.g., https://about.dish.com/2024-07-17-Boost-Mobile-the-Newest-Wireless-Carrier-Launches-New-State-of-the-Art-Nationwide-5G-Network,-Plans-and-Branding* (DISH encouraging customers to purchase DISH products and services because "Boost Mobile customers have access to more towers than any other carrier").

61.     On information and belief, Defendant has committed the foregoing infringing activities without a license.

62.     Peninsula has been damaged as a result of Defendant's infringement described in this Count. Defendant is, thus, liable to Peninsula in an amount that adequately compensates Peninsula for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

63.     On information and belief, Defendant knew the '549 Patent existed and knew of exemplary infringing DISH products and services while committing the foregoing infringing acts thereby willfully, wantonly and deliberately infringing the '549 Patent.

## CONCLUSION

64.     Peninsula is entitled to recover from Defendant the damages sustained by Peninsula as a result of Defendant's wrongful acts and infringements in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

65.     Peninsula has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Peninsula is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

66.     Peninsula hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

67.     Peninsula respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Peninsula the following relief:

(i)      A judgment that one or more claims of the Asserted Patents have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

(ii)     A judgment that DISH's infringement of the Asserted Patents has ben willful;

(iii)    A judgment that Defendant account for and pay to Peninsula all damages and costs incurred by Peninsula because of Defendant's infringing activities and other conduct complained of herein, including an accounting for any sales or damages not presented at trial;

(iv)     A judgment that Defendant account for and pay to Peninsula a reasonable, ongoing, post judgment royalty because of Defendant's infringing activities, including continuing infringing activities, and other conduct complained of herein;

(v)      A judgment that Peninsula be granted pre-judgment and post judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

(vi)     A judgment that this case is exceptional under the provisions of 35 U.S.C. § 285 and award enhanced damages; and

(vii)    Such other and further relief as the Court deems just and equitable.

Dated: April 11, 2025

Respectfully submitted,

*/s/ Patrick J. Conroy*
**Patrick J. Conroy**
Texas Bar No. 24012448
**Ryan P. Griffin**
Texas Bar No. 24053687
**Jonathan H. Rastegar**
Texas Bar No. 24064043
**Nathan L. Levenson**
Texas Bar No. 24097992
**Brandon G. Moore**
Texas Bar No. 24082372
**NELSON BUMGARDNER CONROY PC**
2727 N. Harwood St., Suite 250
Dallas, TX 75201
pat@nelbum.com
ryan@nelbum.com
jon@nelbum.com
nathan@nelbum.com
brandon@nelbum.com

**ATTORNEYS FOR PLAINTIFF PENINSULA INC.**